RICHARD BENTON, APPELLANT, V. BOARD OF EDUCATION OF
SCHOOL DISTRICT NO. 17 OF WINNEBAGO, THURSTON COUNTY,
NEBRASKA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA,
APPELLEE.

361 N.W.2d 515

Filed February 1, 1985.   No. 83-797.

Clarence E. Mock of Johnson and Mock, for appellant.

Rodney R. Smith of Smith, Smith and Boyd, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Richard Benton undertook error proceedings to the district
court from the termination of his employment as a tenured
principal by the board of education of school district No. 17 of
Winnebago, Thurston County, Nebraska. Benton's assign-
ments of error to the district court's affirmance of the board's
action include that the court erred in finding he had received
legally sufficient notice of the grounds for termination. The
record sustains that assignment of error, and we accordingly
reverse the judgment of the district court and remand with
directions.

Benton had served as principal of the senior high school, an administrative position, Neb. Rev. Stat. § 79-101(11) (Reissue 1981), in the Winnebago school system for approximately 4 years. In the spring of 1982 he accepted a written contract renewing that employment for the ensuing 1982-83 school year.

The board's written policy provided, among other things, that after a 2-year probationary period a contract of employment between the board and an administrator was to be deemed renewed and was to remain in full force and effect until terminated in accordance with specified procedures.

Notice was delivered to Benton on February 22, 1983, advising him that the board had voted to consider terminating his contract of employment and that the "just cause" reasons for considering nonrenewal were "Incompetency, Neglect of Duty, unprofessional conduct, and other conduct which interferes substantially with the continued performance of your duties." Benton then requested a description of the evidence and a list of witnesses who would testify against him.

He was next served with notice of the scheduled hearing, to which was attached a list of 20 witnesses who would testify for the board and copies of 14 documents to be used as evidence against him. No comment was made as to the nature of the testimony expected to be elicited from any of the witnesses.

At the hearing a female federal worker formerly assigned to the Winnebago High School as a teacher's aide, and whose name was included on the witness list, testified that some $2^{1}/_{2}$ years earlier Benton asked her if she "fooled around," and commented favorably on her perfume and clothes. The record does not reflect that this worker complained to school authorities about the remarks. There was evidence that she had experienced difficulty carrying out her assignments and had disputes with Benton concerning her duties.

One teacher testified that Benton tape-recorded a grievance conference between Benton and the teacher, unbeknownst to the latter. The record reflects, however, that although Benton did not specifically tell the teacher the conference was being recorded, the recorder was on the table in plain view and Benton made comments such as "let the record reflect." The record does not establish that there exists a policy against

recording grievance conferences.

Although no earlier complaint had been made to Benton, a special education teacher testified about Benton's alleged improper suspension of certain special education students. During this teacher's testimony, an exhibit was introduced which contained a list of initials purportedly representing special education students who had been suspended improperly. That exhibit had not been provided to Benton prior to the hearing.

Conflicting evidence was adduced concerning whether Benton had attempted to buy a computer for himself but caused the purchase to be charged to the school district. When Benton paid for the computer, he took advantage of a discount accorded schools. The record does not reflect a policy against school personnel taking advantage of such discounts.

The record also contains vague testimony from teachers at the Winnebago High School, whose names were on the witness list, about Benton's poor relationships with teachers and students at the high school.

The documents supplied to Benton with regard to the computer purchase were adequate to put him on notice as to that issue. Such, however, was not the case with respect to the other areas which became the focus of the hearing, areas upon which various board members said they relied in reaching their determinations. There was nothing in the documents supplied to Benton which would put him on notice that comments made to a worker 2 years earlier were to be a subject of the hearing, nor that tape recording a grievance hearing, suspending special education students, and teacher-student relationships were at issue. From what was provided him Benton could well conclude that the computer purchase was the only matter he was called upon to defend. Particularly is this so when, on February 9, 1983, 13 days before the notice that the termination of his employment was being considered, Benton had been scored as not less than satisfactory in all areas rated in the annual evaluation prepared by the school superintendent. Indeed, Benton received high ratings in teacher and student relationships.

*Irwin v. Board of Ed. of Sch. Dist. No. 25*, 215 Neb. 794, 340

N.W.2d 877 (1983), disposes of this case adversely to the board. In *Irwin* a tenured teacher received a letter which stated his "neglect of duty, insubordination, and conduct which interferes substantially with the continued performance of [his] duties" were reasons for considering the termination of his employment. *Id*. at 795, 340 N.W.2d at 879. The teacher then requested that the board of education set forth the alleged conditions of unsatisfactory performance which would be the basis for the board's decision, and asked for the names of persons whose testimony would be used at the hearing. The teacher also requested that he be allowed to examine and copy documents or materials that would be used to support the allegations. The board allowed him access to his personnel file at the school. Two days before the hearing, the teacher's attorney contacted the board of education's attorney, who told him that there would be two witnesses testifying against the teacher. The teacher received no other information, and following the hearing his employment was terminated.

We held that the notice was not sufficient to satisfy minimum due process requirements, stating:

> "Within the matrix of the particular circumstances present when a teacher who is to be terminated for cause opposes his termination, minimum procedural due process requires that: (a) he be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist, (b) he be advised of the names and the nature of the testimony of witnesses against him, (c) at a reasonable time after such advice he must be accorded a meaningful opportunity to be heard in his own defense, (d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges."

*Id*. at 796-97, 340 N.W.2d at 879, quoting *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970).

In the present case Benton's notice described the "just cause" reasons for considering the nonrenewal or termination of his employment in the broad, conclusory language of Neb. Rev. Stat. § 79-12,107(4) (Cum. Supp. 1982), but did not tell him the

factual allegations underlying the charges against him. Neither did the list of witnesses nor the copies of the documents given Benton enable him to adequately prepare a defense to the charges. As we said in *Irwin v. Board of Ed. of Sch. Dist. No. 25, supra* at 797-98, 340 N.W.2d at 880: "[I]t is not an undue burden upon the board of education to attach to the letter of notice, or otherwise divulge, the allegations underlying its action in sufficient detail, as to afford the accused party a reasonable opportunity to prepare a defense." See *Hill v. Gerber*, 217 Neb. 670, 350 N.W.2d 545 (1984), holding that one who has obtained a property interest in his employment is entitled to notice which both is in accordance with the employment rules and affords him constitutional due process. Thus, we held therein that a Department of Public Welfare employee charged with supplying a controlled substance to children he was supervising, and using it with them, could not be discharged for the unauthorized taking of the children to a park. See, also, *State ex rel. Douglas v. Schroeder*, 212 Neb. 562, 324 N.W.2d 391 (1982), ruling that notice such as is suitable and fair in view of the circumstances and conditions existent at the time and with reference to the matter to be presented is an element of due process. Thus, we held, one who appeared in court on motions to dismiss and for summary judgment could not be compelled to proceed to hearing on the need to produce documents.

Since the notice given Benton was not sufficient to afford him constitutional due process, the termination proceeding and the decision of the board were a nullity. Benton was not lawfully discharged as a principal of school district No. 17 of Winnebago, Thurston County, Nebraska.

In view of that determination we need not consider the remaining issues presented by Benton's other assignments of error: whether the termination proceeding was a nullity because the board failed to follow the discharge procedures specified by its personnel policy and those contained in its contract with Benton, and whether the evidence is sufficient to support the termination of his employment.

We reverse the judgment of the district court, remand the cause, and direct that the district court order a reversal of the

board's termination of Benton's employment.

REVERSED AND REMANDED WITH DIRECTIONS.